UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LEMCY CORTEZ** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-3110** |
| **DEPUTY THOMAS CUSTARD ET AL** | **SECTION "L" (1)** |

## ORDER & REASONS

Pending before the Court is Defendants' Motion to Examine the Capacity of Plaintiff to Sue Under Federal Rule of Civil Procedure 17. R. Doc. 57. Plaintiff Lemcy Cortez opposes the motion. R. Doc. 58. Having considered the briefing, record, and applicable law, the Court rules as follows.

### I.   BACKGROUND

Plaintiff Lemcy Cortez brings this 42 U.S.C. § 1983 case against Deputy Thomas Custard, Deputy Brittney Reese, Sheriff Joseph P. Lopinto, III, Jefferson Parish, unidentified deputies, and an unidentified insurance company. R. Doc. 1. Mr. Cortez alleges that on November 21, 2019, his wife called 911 and requested that police be dispatched so she could leave their residence without incident because Cortez was in an agitated mood. *Id.* at 3. Cortez avers that an altercation ensued after Deputies Reese and Custard arrived on the scene. *Id.* Cortez claims that Deputies Custard and Reese punched him in the head during and after his arrest. *Id.* at 4. Further, he alleges that Deputy Custard pushed him to the ground, causing him to fall head-first and strike his head. *Id.* Cortez also alleges that upon arrival at the Jefferson Parish Detention Center ("JPDC"), he was struck in the head again by Deputies Custard and Reese and was then beaten by two unknown deputies once inside the center. *Id.* at 4. Cortez was then treated at the JPDC for his injuries, where it was

1

allegedly discovered that he sustained a concussion, brain bleed, broken teeth, broken eyewear, and lacerations and abrasions. *Id.* at 4-5.

Cortez brings this lawsuit under § 1983 and Louisiana Civil Code Art. 2315, alleging excessive force in violation of the Fourteenth Amendment; a cover up by Jefferson Parish Sheriff's Office employees; and ongoing physical and psychological injuries. *Id.* at 5-6. He alleges that the actions of Deputies Custard, Reese, and the unidentified defendants were all done under the color of state law, without provocation, and in violation of his due process rights. *Id.* at 5. Cortez further alleges that Deputies Reese and Custard covered up their wrongful acts in disregard of his due process rights. *Id.* at 6. Lastly, Cortez argues that the Deputies' wrongful actions were the direct and proximate cause of his serious and ongoing physical and psychological injuries in violation of Louisiana Civil Code Article 2315. *Id.*

Defendants Deputy Custard, Deputy Reese, and Sheriff Lopinto deny Cortez's allegations and assert affirmative defenses including, among others: (1) failure to state a claim; (2) all actions by Deputy Custard, Deputy Reese, and Sheriff Lopinto were reasonable under the circumstances and do not support a claim of vicarious liability, respondeat superior, or *Monell* liability; (3) Cortez himself was negligent and/or assumed the risk; (4) the Court lacks jurisdiction over the matter due to insufficient amount in controversy; (5) the claims alleged are frivolous, groundless, and unreasonable; and (8) qualified immunity. R. Doc. 13 at 1-4.

On July 21, 2021, the Court stayed the case pending final disposition of criminal charges pending against Cortez in state court. R. Doc. 18. The parties informed the Court in a telephone status conference in June 2023 that in September of 2022, Cortez had been deemed "irreversibly incompetent to stand trial." R. Docs. 25, 58 at 2. In October 2023, the Court held a scheduling conference and set a jury trial date of June, 24 2024. R. Doc. 40. The parties have conducted

depositions, engaged in discovery and discovery-related motion practice, and have been preparing for trial as scheduled, including by timely filing of witness lists and exhibit lists.

## II. PRESENT MOTION

Defendants bring the instant motion seeking to have the Court determine Cortez's capacity to sue under Rule 17 given the state court's finding of his incompetency to stand trial with regard to those criminal charges. R. Doc. 57. Defendants urge that under Louisiana law, Cortez arguably lacks the capacity to sue and therefore a court determination is appropriate. R. Doc. 57-1 at 2-3.

Cortez opposes the motion, arguing first that Defendants have known about this state court determination of his inability to stand trial for over a year and nevertheless raise this matter for the first time in this Court just one month before trial. R. Doc. 58 at 2. He argues that capacity to sue is considered a defense, which if not raised timely is considered waived. *Id.* Since Defendants did not move to amend pleadings in the time allowed, despite their awareness of this potential defense, Cortez urges the Court to consider it waived. *Id.* at 2-3. Defendants have had ample opportunity to raise this concern, Cortez argues, citing his own "lengthy deposition" on August 9, 2023. *Id.* at 2. Further, under the Louisiana standard for capacity to sue, Cortez argues that he more than satisfies the requirements, as evidenced by his affidavit and deposition testimony in which he was questioned about his mental capabilities. *Id.* at 3-4. He argues that his participation in this suit throughout demonstrate that he knows what the litigation is about and "understand[s] the nature and effect of this litigation." *Id.*

## III. APPLICABLE LAW

Federal Rule of Civil Procedure 17 provides that an individual's capacity to sue or be sued is determined "by the law of the individual's domicile." Fed. R. Civ. P. 17(b)(1). Under Louisiana's code of civil procedure, "[a] mental incompetent does not have the procedural capacity

3

to sue," however the code provision does not define "mental incompetent." La. Code Civ. P. art 684(A). In *Wales v. Maroma*, the Louisiana Court of Appeals for the First Circuit addressed this question. 589 So. 2d 51, 52 (La. App. 1 Cir. 1991). There, the court noted that the law does not "delineate a standard for what constitutes mental incompetency" and determined that "mental incompetency is a conclusion of fact based upon evidence." *Id.* at 52 (citing *Neff v. Ford Motor Credit Company*, 347 So. 2d 1228 (La. App. 1 Cir. 1977)). If a court determines that a plaintiff does not have the capacity to sue, Rule 17(c) allows for a representative to sue in their place, such as a general guardian, committee, conservator, or "a like fiduciary" or the court may appoint a guardian ad litem. Fed. R. Civ. P. 17(c)(1)-(2).

In *Wales*, the court grappled with whether to nullify certain judgments against Mrs. Maroma that were rendered in a separation and divorce proceeding prior to her interdiction. *Id.* at 51. The court was asked to determine if she was mentally incompetent prior to interdiction and at the time of these judgments. *Id.* at 52. To perform this analysis, the court looked to the record and determined that Mrs. Maroma "was hospitalized at least four times in mental institutions prior to the separation, and that she had been diagnosed as a paranoid schizophrenic." *Id.* The court also examined the trial record, including the deposition of her treating psychiatrist, testimony by Mrs. Maroma, and the testimony of other witnesses. *Id.* at 52-53. Some of these witnesses could not recall the exact dates of her hospitalizations and testified that between hospitalizations she had periods of lucidity and appeared to know that the separation proceeding was ongoing. *Id.* The court determined that "undeniably, Mrs. Maroma suffered from mental illness" however "the record is devoid of any evidence showing the exact dates of her illness or the proximity of the hospitalizations to the time of the proceedings in question." *Id.* at 53. The court thus found that she was competent at the time of the proceedings based on the evidence in the record. *Id.*

Other jurisdictions that do not define mental incompetency in this context also conduct factual inquiries to determine the capacity of the party. For example, one federal court in Florida described the inquiry "[i]n the context of federal civil litigation" as "whether the litigant is 'mentally competent to understand the nature and effect of the litigation she has instituted.'" *Scannavino v. Florida Dep't of Corrections*, 242 F.R.D. 662, 664 (M.D. Fla. 2007) (quoting *Bodnar v. Bodnar*, 441 F.2d 1103, 1104 (5th Cir. 1971)). That court appointed a guardian ad litem following a competency hearing. *Id.* at 667. Similarly, a federal court in Alabama interpreting an Alabama law that also did not define incompetency required the party to show that they "understand the nature and effect of the litigation" such that they are capable of "making or communicating responsible decisions" in the context of the litigation. *U.S. v. One Parcel of Property Located at 9607 Lee Road 72, Waverly, Lee County, Ala.*, 915 F. Supp. 2d 1270, 1271-72 (M.D. Ala. 2012). That court ordered the party to submit to a psychological examination to determine competency. *Id.* at 1272.

### IV. DISCUSSION

First, the Court agrees with Cortez's concerns about the timeliness of this motion, which is filed one month before trial when Cortez's condition has been known for months. In that vein, the Court also agrees with Cortez that Defendants could have sought to amend their responsive pleadings pursuant to this Court's scheduling order to address capacity to sue but did not do so despite having this knowledge during that time frame.

Assuming however that Defendants have not waived this argument, the Court nonetheless finds that the record shows Cortez has capacity to sue under Louisiana law. The Court makes this finding while acknowledging that there are several points in his deposition where Cortez either does not remember or does not know the answers to various questions posed by opposing counsel.

For example, when asked about his relationship with his ex-wife, who was a witness to the underlying allegations, the following exchange occurred:

> Q: Let me ask you this. Do you have any idea how you and your wife were getting along before the police got there?
> A: I don't know.

R. Doc. 58-1 at 16:6-16:9. Similarly, when asked about the state criminal charges, which were ultimately dropped, the following exchange occurred:

> Q: You think that they had a hearing and the Court determined you did nothing wrong?
> A: I don't know how to answer that.
> Q: Okay.
> A: They've had - - we were in court like almost every month.
> Q: Do you remember going to what they call a sanity commission?
> A: I do not. I don't know what you mean by that.

*Id.* at 20:10-20:20. There are also several points where Cortez becomes agitated by the questioning in his deposition and his attorney suggests he "take a breath" so that he can calm himself down. *See, e.g.*, *id.* at 22:15-22:17; 28:14-28:17.

However, a full review of the record indicates that Cortez understands the nature and effect of this litigation and he is capable of making and communicating responsible decisions. For example, in his deposition when asked by opposing counsel "I'm trying to figure out what your claim is about, okay?" Cortez responds "My claim, my claim is that I own my own home. You broke into my home. I had had a stroke. You beat the hell out of me from what I understand." *Id.* at 13:8-13:13. He elaborates: "I'm pretty sure if somebody broke into your house and beat you in the head with a witness, with somebody you're getting a divorce with, beats the hell out of you, you would be kind of a little bit upset about this yourself." *Id.* at 13:22-14:2. When asked about conduct occurring on the day in question, this exchange occurred:

> Q: Do you remember fighting with the police?
> A: No, there is no videos of a fight that I can remember.

6

> Q: Okay.
> A: I know there's a video of where it looks like I'm flying through the air with handcuffs on.
> Q: You said you've seen a video that shows you flying through the air being handcuffed?
> A: Yes, there's a video of that.
> Q: And do you know how that happened?
> A: I do not. I only seen the video where it looks like I'm in the air and I go - - it looks like I go the entire distance of my carport into the grass is what it kind of looked like I guess. I don't know if that was a roll or what.

*Id.* at 19:3-19:20. Further, in his sworn affidavit, Cortez acknowledges that he has suffered a traumatic brain injury and "may not be able to recall the specific details of the incident alleged herein" but that nevertheless he "currently handles his own personal financial business with minor assistance," "has participated in trial preparation with his new counsel," and "understand the facts of the case and the process that the case has undergone." R. Doc. 58-2. The Court finds that Cortez understands the nature and effect of this litigation, as required under Louisiana law.

Accordingly, for the foregoing reasons, Defendants' Motion to Examine Capacity to Sue Under Rule 17 is **DENIED**.

New Orleans, Louisiana, this 21st day of May, 2024.

_____<br>United States District Judge